(Slip Opinion) OCTOBER TERM, 2015 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CUOZZO SPEED TECHNOLOGIES, LLC *v.* LEE, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, PATENT AND TRADEMARK OFFICE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 15–446.  Argued April 25, 2016—Decided June 20, 2016

The Leahy-Smith America Invents Act creates an agency procedure called "inter partes review" that allows a third party to ask the U. S. Patent and Trademark Office to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art.  The Act, as relevant here, provides that the Patent Office's decision "whether to institute an inter partes review . . . shall be final and non-appealable," 35 U. S. C. §314(d), and grants the Patent Office authority to issue "regulations . . . establishing and governing inter partes review," §316(a)(4).  A Patent Office regulation issued pursuant to that authority provides that, during inter partes review, a patent claim "shall be given its broadest reasonable construction in light of the specification of the patent in which it appears."  37 CFR §42.100(b).

In 2012, Garmin International, Inc., and Garmin USA, Inc., sought inter partes review of all 20 claims of a patent held by petitioner Cuozzo Speed Technologies, LLC, asserting, among other things, that claim 17 was obvious in light of three prior patents.  The Patent Office agreed to review claim 17.  It also decided to reexamine claims 10 and 14 on that same ground because it determined those claims to be logically linked to the obviousness challenge to claim 17.  The Patent Office, through its Patent Trial and Appeal Board, concluded that the claims were obvious in light of prior art, denied for reasons of futility Cuozzo's motion to amend the claims, and canceled all three claims.

Cuozzo appealed to the Federal Circuit.  Cuozzo claimed that the

Patent Office improperly instituted inter partes review with respect to claims 10 and 14, and it alleged that the Board improperly used the "broadest reasonable construction" standard to interpret the claims rather than the standard used by courts, which gives claims their "ordinary meaning . . . as understood by a person of skill in the art," *Phillips* v. *AWH Corp.,* 415 F. 3d 1303, 1314. The Federal Circuit rejected both arguments. It reasoned that §314(d) made the Patent Office's decision to institute inter partes review "nonappealable," and it concluded that the Patent Office's regulation was a reasonable exercise of the agency's rulemaking authority.

*Held*:

   1. Section 314(d) bars Cuozzo's challenge to the Patent Office's decision to institute inter partes review. Pp. 7–12.

      (a) The text of §314(d) expressly states that the Patent Office's determinations whether to institute inter partes review "shall be *final and nonappealable*." Moreover, construing §314(d) to permit judicial review of the Patent Office's preliminary decision to institute inter partes review undercuts the important congressional objective of giving the agency significant power to revisit and revise earlier patent grants. Past practice in respect to related proceedings, including the predecessor to inter partes review, also supports the conclusion that Congress did not intend for courts to review these initial determinations. Finally, reading §314(d) as limited to interlocutory appeals would render the provision largely superfluous in light of the Administrative Procedure Act. Pp. 7–9.

      (b) The "strong presumption" favoring judicial review, *Mach Mining, LLC* v. *EEOC*, 575 U. S. \_\_\_, \_\_\_, is overcome here by these "'clear and convincing'" indications that Congress intended to bar review, *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 349. Given that presumption, however, the interpretation adopted here applies to cases in which the challenge is to the Patent Office's determination "to initiate an inter partes review *under this section*," or where the challenge consists of questions closely tied to the application and interpretation of statutes related to that determination. Cuozzo's claim does not implicate a constitutional question, nor does it present other questions of interpretation that reach well beyond "this section" in terms of scope and impact. Rather, Cuozzo's allegation that Garmin's petition did not plead "with particularity" the challenge to claims 10 and 14 as required by §312 is little more than a challenge to the Patent Office's conclusion under §314(a) that the "information presented in the petition" warranted review. Pp. 9–12.

   2. The Patent Office regulation requiring the Board to apply the broadest reasonable construction standard to interpret patent claims is a reasonable exercise of the rulemaking authority granted to the

Patent Office by statute. Pp. 12–20.

(a) Where a statute leaves a gap or is ambiguous, this Court typically interprets a congressional grant of rulemaking authority as giving the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute. *United States* v. *Mead Corp.*, 533 U. S. 218, 229; *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843. Here, the statute grants the Patent Office the authority to issue regulations "governing inter partes review," and no statutory provision unambiguously mandates a particular claim construction standard.

The Patent Office's rulemaking authority is not limited to procedural regulations. Analogies to interpretations of other congressional grants of rulemaking authority in other statutes, which themselves do not unambiguously contain a limitation to procedural rules, cannot magically render unambiguous the different language in the different statutory grant of rulemaking authority at issue.

The nature and purpose of inter partes review does not unambiguously require the Patent Office to apply one particular claim construction standard. Cuozzo's contention that the purpose of inter partes review—to establish trial-like procedures for reviewing previously issued patents—supports the application of the ordinary meaning standard ignores the fact that in other significant respects, inter partes review is less like a judicial proceeding and more like a specialized agency proceeding. This indicates that Congress designed a hybrid proceeding. The purpose of inter partes review is not only to resolve patent-related disputes among parties, but also to protect the public's "paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope." *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U. S. 806, 816. Neither the statute's language, nor its purpose, nor its legislative history suggests that Congress decided what standard should apply in inter partes review. Pp. 12–17.

(b) The regulation is a reasonable exercise of the Patent Office's rulemaking authority. The broadest reasonable construction standard helps ensure precision in drafting claims and prevents a patent from tying up too much knowledge, which, in turn, helps members of the public draw useful information from the disclosed invention and understand the lawful limits of the claim. The Patent Office has used this standard for more than 100 years and has applied it in proceedings which, as here, resemble district court litigation.

Cuozzo's two arguments in response are unavailing. Applying the broadest reasonable construction standard in inter partes review is not, as Cuozzo suggests, unfair to a patent holder, who may move to amend at least once in the review process, and who has had sever-

Syllabus

al opportunities to amend in the original application process. And though the application of one standard in inter partes review and another in district court proceedings may produce inconsistent outcomes, that structure is inherent to Congress' regulatory design, and it is also consistent with past practice, as the patent system has long provided different tracks for the review and adjudication of patent claims. The Patent Office's regulation is reasonable, and this Court does not decide whether a better alternative exists as a matter of policy. Pp. 17–20.

793 F. 3d 1268, affirmed.

BREYER, J., delivered the opinion for a unanimous Court with respect to Parts I and III, and the opinion of the Court with respect to Part II, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, and KAGAN, JJ., joined. THOMAS, J., filed a concurring opinion. ALITO, J., filed an opinion concurring in part and dissenting in part, in which SOTOMAYOR, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–446

CUOZZO SPEED TECHNOLOGIES, LLC, PETITIONER *v.* MICHELLE K. LEE, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, PATENT AND TRADEMARK OFFICE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 20, 2016]

JUSTICE BREYER delivered the opinion of the Court.

The Leahy-Smith America Invents Act, 35 U. S. C. §100 *et seq.*, creates a process called "inter partes review." That review process allows a third party to ask the U. S. Patent and Trademark Office to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art. See §102 (requiring "novel[ty]"); §103 (disqualifying claims that are "obvious").

We consider two provisions of the Act. The first says:

"No Appeal.—The determination by the Director [of the Patent Office] whether to institute an inter partes review under this section shall be final and non-appealable." §314(d).

Does this provision bar a court from considering whether the Patent Office wrongly "determin[ed] . . . to institute an inter partes review," *ibid.*, when it did so on grounds not specifically mentioned in a third party's review request?

The second provision grants the Patent Office the au-

thority to issue

> "regulations . . . establishing and governing inter partes review under this chapter."  §316(a)(4).

Does this provision authorize the Patent Office to issue a regulation stating that the agency, in inter partes review,

> "shall [construe a patent claim according to] its broadest reasonable construction in light of the specification of the patent in which it appears"?  37 CFR §42.100(b) (2015).

We conclude that the first provision, though it may not bar consideration of a constitutional question, for example, does bar judicial review of the kind of mine-run claim at issue here, involving the Patent Office's decision to institute inter partes review.  We also conclude that the second provision authorizes the Patent Office to issue the regulation before us.  See, *e.g., United States* v. *Mead Corp.*, 533 U. S. 218, 229 (2001); *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842 (1984).

# I
## A

An inventor obtains a patent by applying to the Patent Office.  A patent examiner with expertise in the relevant field reviews an applicant's patent claims, considers the prior art, and determines whether each claim meets the applicable patent law requirements.  See, *e.g.,* 35 U. S. C. §§101, 102, 103, 112.  Then, the examiner accepts a claim, or rejects it and explains why.  See §132(a).

If the examiner rejects a claim, the applicant can resubmit a narrowed (or otherwise modified) claim, which the examiner will consider anew, measuring the new claim against the same patent law requirements.  If the examiner rejects the new claim, the inventor typically has yet another chance to respond with yet another amended claim.  Ultimately, the Patent Office makes a final deci-

sion allowing or rejecting the application. The applicant may seek judicial review of any final rejection. See §§141(a), 145.

For several decades, the Patent Office has also possessed the authority to reexamine—and perhaps cancel—a patent claim that it had previously allowed. In 1980, for example, Congress enacted a statute providing for "ex parte reexamination." Act to Amend the Patent and Trademark Laws, 35 U. S. C. §301 *et seq.* That statute (which remains in effect) gives "[a]ny person at any time" the right to "file a request for reexamination" on the basis of certain prior art "bearing on the patentability" of an already-issued patent. §§301(a)(1), 302. If the Patent Office concludes that the cited prior art raises "a substantial new question of patentability," the agency can reexamine the patent. §303(a). And that reexamination can lead the Patent Office to cancel the patent (or some of its claims). Alternatively, the Director of the Patent Office can, on her "own initiative," trigger such a proceeding. *Ibid.* And, as with examination, the patent holder can seek judicial review of an adverse final decision. §306.

In 1999 and 2002, Congress enacted statutes that established another, similar procedure, known as "inter partes *reexamination.*" Those statutes granted third parties greater opportunities to participate in the Patent Office's reexamination proceedings as well as in any appeal of a Patent Office decision. See, *e.g.,* American Inventors Protection Act of 1999, §297 *et seq.* (2006 ed.) (superseded).

In 2011, Congress enacted the statute before us. That statute modifies "inter partes *reexamination,*" which it now calls "inter partes *review."* See H. R. Rep. No. 112–98, pt. 1, pp. 46–47 (2011) (H. R. Rep.). Like inter partes reexamination*,* any third party can ask the agency to initiate inter partes review of a patent claim. But the new statute has changed the standard that governs the Patent Office's institution of the agency's process. Instead of

requiring that a request for reexamination raise a "substantial new question of patentability," it now requires that a petition show "a reasonable likelihood that" the challenger "would prevail." Compare §312(a) (2006 ed.) (repealed) with §314(a) (2012 ed.).

The new statute provides a challenger with broader participation rights. It creates within the Patent Office a Patent Trial and Appeal Board (Board) composed of administrative patent judges, who are patent lawyers and former patent examiners, among others. §6. That Board conducts the proceedings, reaches a conclusion, and sets forth its reasons. See *ibid.*

The statute sets forth time limits for completing this review. §316(a)(11). It grants the Patent Office the authority to issue rules. §316(a)(4). Like its predecessors, the statute authorizes judicial review of a "final written decision" canceling a patent claim. §319. And, the statute says that the agency's initial decision "whether to institute an inter partes review" is "final and nonappealable." §314(d); compare *ibid.* with §§312(a), (c) (2006 ed.) (repealed) (the "determination" that a petition for inter partes reexamination "raise[s]" "a substantial new question of patentability" is "final and non-appealable"), and §303(c) (2012 ed.) (similar in respect to ex parte reexamination).

## B

In 2002, Giuseppe A. Cuozzo applied for a patent covering a speedometer that will show a driver when he is driving above the speed limit. To understand the basic idea, think of the fact that a white speedometer needle will look red when it passes under a translucent piece of red glass or the equivalent (say, red cellophane). If you attach a piece of red glass or red cellophane to a speedometer beginning at 65 miles per hour, then, when the white needle passes that point, it will look red. If we attach the

red glass to a plate that can itself rotate, if we attach the plate to the speedometer, if we connect the plate to a Global Positioning System (GPS) receiver, and if we enter onto a chip or a disk all the speed limits on all the Nation's roads, then the GPS can signal where the car is, the chip or disk can signal the speed limit at that place, and the plate can rotate to the right number on the speedometer. Thus, if the speed limit is 35 miles per hour, then the white speedometer needle will pass under the red plate at 35, not 65, and the driver will know if he is driving too fast.

In 2004, the Patent Office granted the patent. See U. S. Patent No. 6,778,074 (Cuozzo Patent). The Appendix contains excerpts from this patent, offering a less simplified (and more technical) description.

## C

Petitioner Cuozzo Speed Technologies, LLC (Cuozzo), now holds the rights to the Cuozzo Patent. In 2012, Garmin International, Inc., and Garmin USA, Inc., filed a petition seeking inter partes review of the Cuozzo Patent's 20 claims. Garmin backed up its request by stating, for example, that the invention described in claim 17 was obvious in light of three prior patents, the Aumayer, Evans, and Wendt patents. U. S. Patent No. 6,633,811; U. S. Patent No. 3,980,041; and U. S. Patent No. 2,711,153. Cf. *Goodyear Tire & Rubber Co.* v. *Ray-O-Vac Co.*, 321 U. S. 275, 280 (1944) (Black, J., dissenting) ("[S]omeone, somewhere, sometime, made th[is] discovery [but] I cannot agree that this patentee is that discoverer").

The Board agreed to reexamine claim 17, as well as claims 10 and 14. The Board recognized that Garmin had not expressly challenged claim 10 and claim 14 on the same obviousness ground. But, believing that "claim 17 depends on claim 14 which depends on claim 10," the Board reasoned that Garmin had "implicitly" challenged

claims 10 and 14 on the basis of the same prior inventions, and it consequently decided to review all three claims together. App. to Pet. for Cert. 188a.

After proceedings before the Board, it concluded that claims 10, 14, and 17 of the Cuozzo Patent were obvious in light of the earlier patents to which Garmin had referred. The Board explained that the Aumayer patent "makes use of a GPS receiver to determine . . . the applicable speed limit at that location for display," the Evans patent "describes a colored plate for indicating the speed limit," and the Wendt patent "describes us[ing] a rotatable pointer for indicating the applicable speed limit." *Id.,* at 146a–147a. Anyone, the Board reasoned, who is "not an automaton"— anyone with "ordinary skill" and "ordinary creativity"— could have taken the automated approach suggested by the Aumayer patent and applied it to the manually adjustable signals described in the Evans and Wendt patents. *Id.,* at 147a. The Board also concluded that Cuozzo's proposed amendments would not cure this defect, *id.,* at 164a–166a, and it consequently denied Cuozzo's motion to amend its claims. Ultimately, it ordered claims 10, 14, and 17 of the Cuozzo Patent canceled, *id.*, at 166a.

Cuozzo appealed to the United States Court of Appeals for the Federal Circuit. Cuozzo argued that the Patent Office improperly instituted inter partes review, at least in respect to claims 10 and 14, because the agency found that Garmin had only *implicitly* challenged those two claims on the basis of the Aumayer, Evans, and Wendt patents, while the statute required petitions to set forth the grounds for challenge "with particularity." §312(a)(3). Cuozzo also argued that the Board, when construing the claims, improperly used the interpretive standard set forth in the Patent Office's regulation (*i.e.*, it gave those claims their "broadest reasonable construction," 37 CFR §42.100(b)), when it should have applied the standard that courts normally use when judging a patent's validity (*i.e.*,

it should have given those claims their "ordinary meaning . . . as understood by a person of skill in the art," *Phillips* v. *AWH Corp.*, 415 F. 3d 1303, 1314 (CA Fed. 2005) (en banc)).

A divided panel of the Court of Appeals rejected both arguments. First, the panel majority pointed out that 35 U. S. C. §314(d) made the decision to institute inter partes review "nonappealable." *In re Cuozzo Speed Technologies, LLC*, 793 F. 3d 1268, 1273 (CA Fed. 2015) (internal quotation marks omitted). Second, the panel majority affirmed the application of the broadest reasonable construction standard on the ground (among others) that the regulation was a reasonable, and hence lawful, exercise of the Patent Office's statutorily granted rulemaking authority. *Id.,* at 1278–1279; see §314(a)(4). By a vote of 6 to 5, the Court of Appeals denied Cuozzo's petition for rehearing en banc. *In re Cuozzo Speed Technologies, LLC*, 793 F. 3d 1297, 1298 (CA Fed. 2015).

We granted Cuozzo's petition for certiorari to review these two questions.

## II

Like the Court of Appeals, we believe that Cuozzo's contention that the Patent Office unlawfully initiated its agency review is not appealable. For one thing, that is what §314(d) says. It states that the "determination by the [Patent Office] whether to institute an inter partes review under this section shall be *final and nonappealable.*" (Emphasis added.)

For another, the legal dispute at issue is an ordinary dispute about the application of certain relevant patent statutes concerning the Patent Office's decision to institute inter partes review. Cuozzo points to a related statutory section, §312, which says that petitions must be pleaded "with particularity." Those words, in its view, mean that the petition should have specifically said that

claims 10 and 14 are also obvious in light of this same prior art. Garmin's petition, the Government replies, need not have mentioned claims 10 and 14 separately, for claims 10, 14, and 17 are all logically linked; the claims "rise and fall together," and a petition need not simply repeat the same argument expressly when it is so obviously implied. See 793 F. 3d, at 1281. In our view, the "No Appeal" provision's language must, at the least, forbid an appeal that attacks a "determination . . . whether to institute" review by raising this kind of legal question and little more. §314(d).

Moreover, a contrary holding would undercut one important congressional objective, namely, giving the Patent Office significant power to revisit and revise earlier patent grants. See H. R. Rep., at 45, 48 (explaining that the statute seeks to "improve patent quality and restore confidence in the presumption of validity that comes with issued patents"); 157 Cong. Rec. 9778 (2011) (remarks of Rep. Goodlatte) (noting that inter partes review "screen[s] out bad patents while bolstering valid ones"). We doubt that Congress would have granted the Patent Office this authority, including, for example, the ability to continue proceedings even after the original petitioner settles and drops out, §317(a), if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review.

Further, the existence of similar provisions in this, and related, patent statutes reinforces our conclusion. See §319 (limiting appellate review to the "final written decision"); §312(c) (2006 ed.) (repealed) (the "determination" that a petition for inter partes *reexamination* "raise[s]" a "substantial new question of patentability" is "final and non-appealable"); see also §303(c) (2012 ed.); *In re Hiniker Co.*, 150 F. 3d 1362, 1367 (CA Fed. 1998) ("Section 303 . . . is directed toward the [Patent Office's] authority to insti-

tute a reexamination, and there is no provision granting us direct review of that decision").

The dissent, like the panel dissent in the Court of Appeals, would limit the scope of the "No Appeal" provision to *interlocutory* appeals, leaving a court free to review the initial decision to institute review in the context of the agency's final decision. *Post,* at 1, 5 (ALITO, J., concurring in part and dissenting in part); 793 F. 3d, at 1291 (Newman, J., dissenting). We cannot accept this interpretation. It reads into the provision a limitation (to interlocutory decisions) that the language nowhere mentions and that is unnecessary. The Administrative Procedure Act already limits review to final agency decisions. 5 U. S. C. §704. The Patent Office's decision to initiate inter partes review is "preliminary," not "final." *Ibid.* And the agency's decision to deny a petition is a matter committed to the Patent Office's discretion. See §701(a)(2); 35 U. S. C. §314(a) (no mandate to institute review); see also *post,* at 9, and n. 6. So, read as limited to such preliminary and discretionary decisions, the "No Appeal" provision would seem superfluous. The dissent also suggests that its approach is a "familiar practice," consistent with other areas of law. *Post*, at 8. But the kind of initial determination at issue here—that there is a "reasonable likelihood" that the claims are unpatentable on the grounds asserted—is akin to decisions which, in other contexts, we have held to be unreviewable. See *Kaley* v. *United States*, 571 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 8) ("The grand jury gets to say— without any review, oversight, or second-guessing— whether probable cause exists to think that a person committed a crime").

We recognize the "strong presumption" in favor of judicial review that we apply when we interpret statutes, including statutes that may limit or preclude review. *Mach Mining, LLC* v. *EEOC*, 575 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 4) (internal quotation marks omitted). This pre-

sumption, however, may be overcome by "'clear and convincing'" indications, drawn from "specific language," "specific legislative history," and "inferences of intent drawn from the statutory scheme as a whole," that Congress intended to bar review. *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 349–350 (1984). That standard is met here. The dissent disagrees, and it points to *Lindahl* v. *Office of Personnel Management*, 470 U. S. 768 (1985), to support its view that, in light of this presumption, §314(d) should be read to permit judicial review of any issue bearing on the Patent Office's preliminary decision to institute inter partes review. See *post*, at 4–5. *Lindahl* is a case about the judicial review of disability determinations for federal employees. We explained that a statute directing the Office of Personnel Management to "'determine questions of disability,'" and making those decisions "'final,'" "'conclusive,'" and "'not subject to review,'" barred a court from revisiting the "factual underpinnings of . . . disability determinations"—though it permitted courts to consider claims alleging, for example, that the Office of Personnel Management "'substantial[ly] depart[ed] from important procedural rights.'" 470 U. S., at 771, 791. Thus, *Lindahl*'s interpretation of that statute preserved the agency's primacy over its core statutory function in accord with Congress' intent. Our interpretation of the "No Appeal" provision here has the same effect. Congress has told the *Patent Office* to determine whether inter partes review should proceed, and it has made the agency's decision "final" and "nonappealable." §314(d). Our conclusion that courts may not revisit this initial determination gives effect to this statutory command. Moreover, *Lindahl*'s conclusion was consistent with prior judicial practice in respect to those factual agency determinations, and legislative history "strongly suggest[ed]" that Congress intended to preserve this prior practice. *Id.,* at 780. These features, as explained above, also support

our interpretation: The text of the "No Appeal" provision, along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions.

Nevertheless, in light of §314(d)'s own text and the presumption favoring review, we emphasize that our interpretation applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review. See §314(d) (barring appeals of "determinations . . . to initiate an inter partes review *under this section*" (emphasis added)). This means that we need not, and do not, decide the precise effect of §314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section." Cf. *Johnson* v. *Robison*, 415 U. S. 361, 367 (1974) (statute precluding review of "any question of law or fact under any law administered by the Veterans' Administration" does not bar review of constitutional challenges (emphasis deleted and internal quotation marks omitted)); *Traynor* v. *Turnage*, 485 U. S. 535, 544–545 (1988) (that same statute does not bar review of decisions made under different statutes enacted at other times). Thus, contrary to the dissent's suggestion, we do not categorically preclude review of a final decision where a petition fails to give "sufficient notice" such that there is a due process problem with the entire proceeding, nor does our interpretation enable the agency to act outside its statutory limits by, for example, canceling a patent claim for "indefiniteness under §112" in inter partes review. *Post*, at 10–13. Such "shenanigans"

may be properly reviewable in the context of §319 and under the Administrative Procedure Act, which enables reviewing courts to "set aside agency action" that is "contrary to constitutional right," "in excess of statutory jurisdiction," or "arbitrary [and] capricious." Compare *post*, at 13, with 5 U. S. C. §§706(2)(A)–(D).

By contrast, where a patent holder merely challenges the Patent Office's "determin[ation] that the information presented in the petition . . . shows that there is a reasonable likelihood" of success "with respect to at least 1 of the claims challenged," §314(a), or where a patent holder grounds its claim in a statute closely related to that decision to institute inter partes review, §314(d) bars judicial review. In this case, Cuozzo's claim that Garmin's petition was not pleaded "with particularity" under §312 is little more than a challenge to the Patent Office's conclusion, under §314(a), that the "information presented in the petition" warranted review. Cf. *United States* v. *Williams*, 504 U. S. 36, 54 (1992) ("A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the . . . presentation was 'incomplete' or 'misleading'"). We therefore conclude that §314(d) bars Cuozzo's efforts to attack the Patent Office's determination to institute inter partes review in this case.

## III

Cuozzo further argues that the Patent Office lacked the legal authority to issue its regulation requiring the agency, when conducting an inter partes review, to give a patent claim "its broadest reasonable construction in light of the specification of the patent in which it appears." 37 CFR §42.100(b). Instead, Cuozzo contends that the Patent Office should, like the courts, give claims their "ordinary meaning . . . as understood by a person of skill in the art." *Phillips*, 415 F. 3d, at 1314.

The statute, however, contains a provision that grants

the Patent Office authority to issue "regulations . . . establishing and governing inter partes review under this chapter." 35 U. S. C. §316(a)(4). The Court of Appeals held that this statute gives the Patent Office the legal authority to issue its broadest reasonable construction regulation. We agree.

### A

We interpret Congress' grant of rulemaking authority in light of our decision in *Chevron U. S. A. Inc.*, 467 U. S. 837. Where a statute is clear, the agency must follow the statute. *Id.,* at 842–843. But where a statute leaves a "gap" or is "ambigu[ous]," we typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute. *Mead Corp.*, 533 U. S., at 229; *Chevron U. S. A. Inc.*, *supra,* at 843. The statute contains such a gap: No statutory provision unambiguously directs the agency to use one standard or the other. And the statute "express[ly] . . . authoriz[es] [the Patent Office] to engage in the process of rulemaking" to address that gap. *Mead Corp.*, *supra,* at 229. Indeed, the statute allows the Patent Office to issue rules "governing inter partes review," §316(a)(4), and the broadest reasonable construction regulation is a rule that governs inter partes review.

Both the dissenting judges in the Court of Appeals and Cuozzo believe that other ordinary tools of statutory interpretation, *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 432, and n. 12 (1987), lead to a different conclusion. The dissenters, for example, point to cases in which the Circuit interpreted a grant of rulemaking authority in a different statute, §2(b)(2)(A), as limited to *procedural* rules. See, *e.g., Cooper Technologies Co.* v. *Dudas*, 536 F. 3d 1330, 1335 (CA Fed. 2008). These cases, however, as we just said, interpret a different statute. That statute does not clearly contain the Circuit's claimed limitation, nor is its

language the same as that of §316(a)(4). Section 2(b)(2)(A) grants the Patent Office authority to issue "regulations" "which . . . shall govern . . . *proceedings in the Office*" (emphasis added), but the statute before us, §316(a)(4), does not refer to "proceedings"—it refers more broadly to regulations "establishing and governing inter partes review." The Circuit's prior interpretation of §2(b)(2)(A) cannot magically render unambiguous the different language in the different statute before us.

Cuozzo and its supporting *amici* believe we will reach a different conclusion if we carefully examine the purpose of inter partes review. That purpose, in their view, is to modify the previous reexamination procedures and to replace them with a "'trial, adjudicatory in nature.'" Brief for Petitioner 26 (quoting *Google Inc.* v. *Jongerius Panoramic Techs., LLC*, IPR 2013–00191, Paper No. 50, p. 4 (PTAB, Feb. 13, 2014))). They point out that, under the statute, an opposing party can trigger inter partes review. Parties can engage in "discovery of relevant evidence," including "deposition[s], . . . affidavits or declarations" as well as anything "otherwise necessary in the interest of justice." §316(a)(5). Parties may present "factual evidence and expert opinions" to support their arguments. §316(a)(8). The challenger bears the burden of proving unpatentability. §318(e). And, after oral argument before a panel of three of the Board's administrative patent judges, it issues a final written decision. §§6, 316(a)(10), 318. Perhaps most importantly, a decision to cancel a patent normally has the same effect as a district court's determination of a patent's invalidity.

In light of these adjudicatory characteristics, which make these agency proceedings similar to court proceedings, Congress, in Cuozzo's view, must have designed inter partes review as a "surrogate for court proceedings." Brief for Petitioner 28. Cuozzo points to various sources of legislative history in support of its argument. See H. R.

Rep., at 48 (Inter partes review is a "quick and cost effective alternativ[e] to litigation"); *id.,* at 46–47 ("The Act converts inter partes reexamination from an examinational to an adjudicative proceeding"); see also S. Rep. No. 110–259, p. 20 (2008) (Inter partes review is "a quick, inexpensive, and reliable alternative to district court litigation"); 157 Cong. Rec. 3429–3430 (2011) (remarks of Sen. Kyl) ("Among the reforms that are expected to expedite these proceedings [is] the shift from an examinational to an adjudicative model"). And, if Congress intended to create a "surrogate" for court proceedings, why would Congress not also have intended the agency to use the claim construction standard that district courts apply (namely, the ordinary meaning standard), rather than the claim construction standard that patent examiners apply (namely, the broadest reasonable construction standard)?

The problem with Cuozzo's argument, however, is that, in other significant respects, inter partes review is less like a judicial proceeding and more like a specialized agency proceeding. Parties that initiate the proceeding need not have a concrete stake in the outcome; indeed, they may lack constitutional standing. See §311(a); cf. *Consumer Watchdog* v. *Wisconsin Alumni Research Foundation*, 753 F. 3d 1258, 1261–1262 (CA Fed. 2014). As explained above, challengers need not remain in the proceeding; rather, the Patent Office may continue to conduct an inter partes review even after the adverse party has settled. §317(a). Moreover, as is the case here, the Patent Office may intervene in a later *judicial* proceeding to defend its decision—even if the private challengers drop out. And the burden of proof in inter partes review is different than in the district courts: In inter partes review, the challenger (or the Patent Office) must establish unpatentability "by a preponderance of the evidence"; in district court, a challenger must prove invalidity by "clear and convincing evidence." Compare §316(e) with *Microsoft*

*Corp.* v. *i4i Ltd. Partnership*, 564 U. S. 91, 95 (2011).

Most importantly, these features, as well as inter partes review's predecessors, indicate that the purpose of the proceeding is not quite the same as the purpose of district court litigation. The proceeding involves what used to be called a *reexamination* (and, as noted above, a cousin of inter partes review, ex parte reexamination, 35 U. S. C. §302 *et seq.*, still bears that name). The name and accompanying procedures suggest that the proceeding offers a second look at an earlier administrative grant of a patent. Although Congress changed the name from "reexamination" to "review," nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely, to reexamine an earlier agency decision. Thus, in addition to helping resolve concrete patent-related disputes among parties, inter partes review helps protect the public's "paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope." *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U. S. 806, 816 (1945); see H. R. Rep., at 39–40 (Inter partes review is an "efficient system for challenging patents that should not have issued").

Finally, neither the statutory language, its purpose, or its history suggest that Congress considered what standard the agency should apply when reviewing a patent claim in inter partes review. Cuozzo contends that §301(d), explaining that the Patent Office should "determine the proper meaning of a patent claim," reinforces its conclusion that the ordinary meaning standard should apply. But viewed against a background of language and practices indicating that Congress designed a hybrid proceeding, §301(d)'s reference to the "proper meaning" of a claim is ambiguous. It leaves open the question of which claim construction standard is "proper."

The upshot is, whether we look at statutory language alone, or that language in context of the statute's purpose,

we find an express delegation of rulemaking authority, a "gap" that rules might fill, and "ambiguity" in respect to the boundaries of that gap. *Mead Corp.*, 533 U. S., at 229; see *Chevron U. S. A. Inc.*, 467 U. S*.,* at 843. We consequently turn to the question whether the Patent Office's regulation is a reasonable exercise of its rulemaking authority.

## B

We conclude that the regulation represents a reasonable exercise of the rulemaking authority that Congress delegated to the Patent Office. For one thing, construing a patent claim according to its broadest reasonable construction helps to protect the public. A reasonable, yet unlawfully broad claim might discourage the use of the invention by a member of the public. Because an examiner's (or reexaminer's) use of the broadest reasonable construction standard increases the possibility that the examiner will find the claim too broad (and deny it), use of that standard encourages the applicant to draft narrowly. This helps ensure precision while avoiding overly broad claims, and thereby helps prevent a patent from tying up too much knowledge, while helping members of the public draw useful information from the disclosed invention and better understand the lawful limits of the claim. See §112(a); *Nautilus, Inc.* v. *Biosig Instruments, Inc.*, 572 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 10); see also *In re Yamamoto*, 740 F. 2d 1569, 1571 (CA Fed. 1984).

For another, past practice supports the Patent Office's regulation. See 77 Fed. Reg. 48697 (2012). The Patent Office has used this standard for more than 100 years. 793 F. 3d, at 1276. It has applied that standard in proceedings, which, as here, resemble district court litigation. See *Bamberger* v. *Cheruvu*, 55 USPQ 2d 1523, 1527 (BPAI 1998) (broadest reasonable construction standard applies in interference proceedings); Brief for Generic Pharmaceu-

tical Association et al. as *Amici Curiae* 7–16 (describing similarities between interference proceedings and adjudicatory aspects of inter partes review); see also *In re Yamamoto*, *supra,* at 1571 (broadest reasonable construction standard applies in reexamination). It also applies that standard in proceedings that may be consolidated with a concurrent inter partes review. See 77 Fed. Reg. 48697–48698.

Cuozzo makes two arguments in response. First, Cuozzo says that there is a critical difference between the Patent Office's initial *examination* of an application to determine if a patent should issue, and this proceeding, in which the agency *reviews* an already-issued patent. In an initial examination of an application for a patent the examiner gives the claim its broadest reasonable construction. But if the patent examiner rejects the claim, then, as described above, Part I–A, *supra*, the applicant has a right to amend and resubmit the claim. And the examiner and applicant may repeat this process at least once more. This system—broad construction with a chance to amend—both protects the public from overly broad claims and gives the applicant a fair chance to draft a precise claim that will qualify for patent protection. In inter partes review, however, the broadest reasonable construction standard may help protect certain public interests, but there is no absolute right to amend any challenged patent claims. This, Cuozzo says, is unfair to the patent holder.

The process however, is not as unfair as Cuozzo suggests. The patent holder may, at least once in the process, make a motion to do just what he would do in the examination process, namely, amend or narrow the claim. §316(d) (2012 ed.). This opportunity to amend, together with the fact that the original application process may have presented several additional opportunities to amend the patent, means that use of the broadest reasonable construction standard is, as a general matter, not unfair to

the patent holder in any obvious way.

Cuozzo adds that, as of June 30, 2015, only 5 out of 86 motions to amend have been granted. Brief for Petitioner 30; see Tr. of Oral Arg. 30 (noting that a sixth motion had been granted by the time of oral argument in this case). But these numbers may reflect the fact that no amendment could save the inventions at issue, *i.e.*, that the patent should have never issued at all.

To the extent Cuozzo's statistical argument takes aim at the manner in which the Patent Office has exercised its authority, that question is not before us. Indeed, in this particular case, the agency determined that Cuozzo's proposed amendment "enlarge[d]," rather than narrowed, the challenged claims. App. to Pet. for Cert. 165a–166a; see §316(d)(3). Cuozzo does not contend that the decision not to allow its amendment is "arbitrary" or "capricious," or "otherwise [un]lawful." 5 U. S. C. §706(2)(a).

Second, Cuozzo says that the use of the broadest reasonable construction standard in inter partes review, together with use of an ordinary meaning standard in district court, may produce inconsistent results and cause added confusion. A district court may find a patent claim to be valid, and the agency may later cancel that claim in its own review. We recognize that that is so. This possibility, however, has long been present in our patent system, which provides different tracks—one in the Patent Office and one in the courts—for the review and adjudication of patent claims. As we have explained above, inter partes review imposes a different burden of proof on the challenger. These different evidentiary burdens mean that the possibility of inconsistent results is inherent to Congress' regulatory design. Cf. *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 235–238 (1972) (*per curiam*).

Moreover, the Patent Office uses the broadest reasonable construction standard in other proceedings, including

interference proceedings (described above), which may implicate patents that are later reviewed in district court. The statute gives the Patent Office the power to consolidate these other proceedings with inter partes review. To try to create uniformity of standards would consequently prove difficult. And we cannot find unreasonable the Patent Office's decision to prefer a degree of inconsistency in the standards used between the courts and the agency, rather than among agency proceedings. See 77 Fed. Reg. 48697–48698.

Finally, Cuozzo and its supporting *amici* offer various policy arguments in favor of the ordinary meaning standard. The Patent Office is legally free to accept or reject such policy arguments on the basis of its own reasoned analysis. Having concluded that the Patent Office's regulation, selecting the broadest reasonable construction standard, is reasonable in light of the rationales described above, we do not decide whether there is a better alternative as a policy matter. That is a question that Congress left to the particular expertise of the Patent Office.

\*     \*     \*

For the reasons set forth above, we affirm the judgment of the Court of Appeals for the Federal Circuit.

*It is so ordered.*

APPENDIX

**SPEED LIMIT INDICATOR AND METHOD FOR
DISPLAYING SPEED AND THE RELEVANT SPEED
LIMIT**



Figure 1

\*     \*     \*



Figure 4

\* \* \*

## DESCRIPTION OF THE CURRENT EMBODIMENT

"In FIG. **1**, a new and improved speed limit indicator and method for displaying speed and the relevant speed limit **10** . . . is illustrated . . . . More particularly, the speed limit indicator and method for displaying speed and the relevant speed limit **10** has a speedometer **12** mounted on a dashboard **26**. [The] [s]peedometer **12** has a back-plate **14** made of plastic, speed denoting markings **16** painted on [that] backplate **14**, a colored display **18** made of a red plastic filter, and a plastic needle **20** rotably mounted in the center of [the] backplate **14**. A [GPS] receiver **22** is positioned adjacent to the speedometer **12**. Other gauges **24** typically present on a dashboard **26** are shown.

.          .          .          .          .

"[I]n FIG. **4**, a new and improved speed limit indicator and method for displaying speed and the relevant speed limit **10** . . . is illustrated . . . . More particularly, the speed limit indicator and method for displaying speed and the relevant speed limit **10** has a backplate **14**, colored display **18**, housing **28**, and axle **30**.

.          .          .          .          .

"I claim:

.          .          .          .          .

"**10**. A speed limit indicator comprising:

"a [GPS] receiver;

"a display controller connected to said [GPS] receiver, wherein said display controller adjusts a colored display in response to signals from said [GPS] receiver to continuously update the delineation of which speed readings are in violation of the speed limit at a vehicle's present location; and

Appendix to opinion of the Court

"a speedometer integrally attached to said colored display.

.       .       .       .       .

"**14**. The speed limit indicator as defined in claim **10**, wherein said colored display is a colored filter.

.       .       .       .       .

"**17**. The speed limit indicator as defined in claim **14**, wherein said display controller rotates said colored filter independently of said speedometer to continuously update the delineation of which speed readings are in violation of the speed limit at a vehicles present location."   Cuozzo Patent.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–446

_____

CUOZZO SPEED TECHNOLOGIES, LLC, PETITIONER
*v.* MICHELLE K. LEE, UNDER SECRETARY OF COM-
MERCE FOR INTELLECTUAL PROPERTY AND DIR-
ECTOR, PATENT AND TRADEMARK OFFICE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[June 20, 2016]

JUSTICE THOMAS, concurring.

The Court invokes *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), and *United States* v. *Mead Corp.*, 533 U. S. 218 (2001), to resolve one of the questions presented in this case. See *ante,* at 2, 13–20. But today's decision does not rest on *Chevron*'s fiction that ambiguity in a statutory term is best construed as an implicit delegation of power to an administrative agency to determine the bounds of the law. In an appropriate case, this Court should reconsider that fiction of *Chevron* and its progeny. See *Michigan* v. *EPA*, 576 U. S. \_\_\_, \_\_\_ (2015) (THOMAS, J., concurring) (slip op., at 2) ("*Chevron* deference raises serious separation-of-powers questions"); see also *Department of Transportation* v. *Association of American Railroads*, 575 U. S. \_\_\_, \_\_\_ (2015) (THOMAS, J., concurring in judgment) (slip op., at 4) ("[T]he discretion inherent in executive power does *not* comprehend the discretion to formulate generally applicable rules of private conduct"); *Perez* v. *Mortgage Bankers Assn.*, 575 U. S. \_\_\_, \_\_\_–\_\_\_ (2015) (THOMAS, J., concurring in judgment) (slip op., at 8–9) ("Those who ratified the Constitution knew that legal texts would often contain ambiguities. . . . The judicial power was understood to

include the power to resolve these ambiguities over time"); Cass, Is *Chevron*'s Game Worth the Candle? Burning Interpretation at Both Ends, in Liberty's Nemesis 57–69 (D. Reuter & J. Yoo eds. 2016).

The Court avoids those constitutional concerns today because the provision of the America Invents Act at issue contains an express and clear conferral of authority to the Patent Office to promulgate rules governing its own proceedings. See 35 U. S. C. §316(a)(4); *ante,* at 13. And by asking whether the Patent Office's preferred rule is reasonable, *ante,* at 17–20, the Court effectively asks whether the rulemaking was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in conformity with the Administrative Procedure Act, 5 U. S. C. §706(2)(A). I therefore join the Court's opinion in full.

# SUPREME COURT OF THE UNITED STATES

No. 15–446

## CUOZZO SPEED TECHNOLOGIES, LLC, PETITIONER *v.* MICHELLE K. LEE, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, PATENT AND TRADEMARK OFFICE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 20, 2016]

JUSTICE ALITO, with whom JUSTICE SOTOMAYOR joins, concurring in part and dissenting in part.

Congress has given the Patent and Trademark Office considerable authority to review and cancel issued patent claims. At the same time, Congress has cabined that power by imposing significant conditions on the Patent Office's institution of patent review proceedings. Unlike the Court, I do not think that Congress intended to shield the Patent Office's compliance—or noncompliance—with these limits from all judicial scrutiny. Rather, consistent with the strong presumption favoring judicial review, Congress required only that judicial review, including of issues bearing on the institution of patent review proceedings, be channeled through an appeal from the agency's final decision. I respectfully dissent from the Court's contrary holding.[1]

I

In the Leahy-Smith America Invents Act (AIA), 35 U. S. C. §100 *et seq.*, Congress created three new mecha-

---

[1] I agree with the Court that the Patent Office permissibly applies a "broadest reasonable construction" standard to construe patent claims in inter partes review, and I therefore join Parts I and III of its opinion.

nisms for Patent Office review of issued patent claims—
inter partes review, post-grant review, and covered busi-
ness method patent review (CBM review). This case
involves the first of these proceedings, inter partes review.

Under inter partes review, anyone may file a petition
challenging the patentability of an issued patent claim at
almost any time. §§311(a), (c). The grounds for challenge
are limited to the patentability of the claim under §102
(which requires patent claims to be novel) and §103 (which
requires patent claims to be nonobvious). §311(b).

The statute imposes other restrictions as well. A peti-
tion for inter partes review "may be considered only if" the
petition satisfies certain requirements, including (as rele-
vant here) that the petition "identif[y], in writing and with
particularity, each claim challenged, the grounds on which
the challenge to each claim is based, and the evidence that
supports the grounds for the challenge to each claim."
§312(a)(3). Additionally, "inter partes review may not be
instituted" if the party challenging the patent previously
filed a civil action challenging the patent's validity or was
sued for infringing the patent more than a year before
seeking inter partes review. §§315(a)(1), (b). Finally, the
Patent Office may not institute inter partes review "unless
the Director [of the Patent Office] determines that the
information presented in the [challenger's] petition . . .
and any response [by the patent owner] shows that there
is a reasonable likelihood that the petitioner would prevail
with respect to at least 1 of the claims challenged in the
petition." §314(a).[2]

The statute provides that "[t]he determination by the

_____

[2] The Director of the Patent Office has delegated his authority to
institute inter partes review to the Patent Trial and Appeal Board
(Board), which also conducts and decides the inter partes review. See
37 CFR §§42.4(a), 42.108 (2015); 35 U. S. C. §§316(c), 318(a). I there-
fore use the term "Patent Office" to refer to the Director, the Board, and
the Patent Office generally, as the case may be.

Director whether to institute an inter partes review under this section shall be final and nonappealable." §314(d). If inter partes review is instituted, the Patent Office conducts a trial that culminates in a "final written decision" on the patentability of the challenged claims. §318(a). Any patent owner or challenger that is "dissatisfied" with that decision may appeal to the Federal Circuit. §319.

## II

In this case, the Patent Office instituted inter partes review of claims 10 and 14 of Cuozzo's patent based on prior art that the challenger's petition did not cite with respect to those claims. After trial, the Patent Office issued a final written decision holding those claims unpatentable, and Cuozzo appealed that decision to the Federal Circuit. In its appeal, Cuozzo argued (among other things) that the Patent Office had violated the requirement that a petition for inter partes review "may be considered only if" the petition identifies "the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge," "with particularity." §312(a)(3).

The Federal Circuit held that it could not entertain this argument because §314(d) provides that the Patent Office's decision to institute an inter partes review is "final and nonappealable." See *In re Cuozzo Speed Technologies, LLC*, 793 F. 3d 1268, 1273 (2015). This Court now affirms.

I disagree. We have long recognized that "Congress rarely intends to prevent courts from enforcing its directives to federal agencies. For that reason, this Court applies a 'strong presumption' favoring judicial review of administrative action." *Mach Mining, LLC* v. *EEOC*, 575 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 4) (quoting *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670 (1986)). While the "presumption is rebuttable," "the

agency bears a 'heavy burden' in attempting to show that Congress 'prohibit[ed] all judicial review' of the agency's compliance with a legislative mandate." *Mach Mining*, *supra,* at ___–___ (slip op., at 4–5) (quoting *Dunlop* v. *Bachowski*, 421 U. S. 560, 567 (1975)).  If a provision can reasonably be read to permit judicial review, it should be.

Our decision in *Lindahl* v. *Office of Personnel Management*, 470 U. S. 768 (1985), illustrates the power of this presumption.  The statute at issue there provided that agency "'decisions . . . concerning [questions of disability and dependency] are final and conclusive and are not subject to review.'" *Id.,* at 771.  The Federal Circuit concluded that the statute cut off all judicial review of such decisions, stating that "'[i]t is difficult to conceive of a more clear-cut statement of congressional intent to preclude review than one in which the concept of finality is thrice repeated in a single sentence.'" *Id.,* at 779.  We reversed.  We acknowledged that the statute "plausibly c[ould] be read as imposing an absolute bar to judicial review," but we concluded that "it also quite naturally c[ould] be read as precluding review only of . . . *factual* determinations" underlying the agency's decision, while permitting review of legal questions. *Ibid.*  In light of the presumption of reviewability, we adopted the latter reading.  We observed that "when Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive," giving as an example a statute that made an agency decision "'final and conclusive for all purposes and with respect to all questions of law or fact'" and "'not subject to review by another official of the United States or by a court by mandamus or otherwise.'" *Id.,* at 779–780, and n. 13.[3]

_____

[3]The Court tries to recast *Lindahl* as a decision about "agenc[y] primacy" by focusing on its recognition that factual questions were unreviewable under the relevant statute (no one disputed that) and treating

This is a far easier case than *Lindahl*. There is no question that the statute now before us can naturally— perhaps most naturally—be read to permit judicial review of issues bearing on the Patent Office's institution of inter partes review. Section 314(d) reads: "The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." Unlike the statutes we addressed in *Lindahl* (including the one we found to permit review), §314(d) does not say that an institution decision is "not subject to review." Instead, it makes the institution decision "nonappealable." This is fairly interpreted to bar only an *appeal* from the institution decision itself, while allowing *review* of institution-related issues in an appeal from the Patent Office's final written decision at the end of the proceeding. See §319. Our cases have used the term "nonappealable" in just this way—to refer to matters that are not *immediately* or *independently* appealable, but which are subject to review at a later point.[4] Thus, while the decision to institute inter partes review is "final and nonappealable" in the sense that a court cannot stop the proceeding from going forward,[5] the question whether it was lawful to institute

——————

the case's holding that legal questions *were* reviewable as an afterthought. *Ante,* at 10. The review that *Lindahl* permitted—to correct "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination," 470 U. S., at 791 (internal quotation marks omitted)—is quite similar to the review I envision of Patent Office decisions to institute inter partes review, as the discussion that follows makes clear.

[4] See *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 105, n. 1, 109 (2009) (agreeing with decisions holding that attorney-client privilege rulings are "nonappealable" because "postjudgment appeals generally suffice to protect the rights of litigants"); *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 469, 472, n. 17 (1978) (describing an order denying class certification as "nonappealable" but noting that it "is subject to effective review after final judgment").

[5] Like the Court, I do not have occasion to address whether in ex-

review will not escape judicial scrutiny. This approach is consistent with the normal rule that a party may challenge earlier agency rulings that are themselves "not directly reviewable" when seeking review of a final, appealable decision. 5 U. S. C. §704. And it strikes a sensible balance: The Patent Office may proceed unimpeded with the inter partes review process (which must normally be completed within one year, see 35 U. S. C. §316(a)(11)), but it will be held to account for its compliance with the law at the end of the day.

In rejecting this commonsense interpretation, the Court gives short shrift to the presumption in favor of judicial review. Its primary reason for disregarding the presumption reduces to an assertion—devoid of any textual analysis—that *surely* §314(d) must bar review of legal questions related to institution decisions. *Ante,* at 7–8. As I have explained, the statute's text does not require that conclusion.

Moving (further) away from the statutory text, the Court next objects that allowing judicial review "would undercut one important congressional objective, namely, giving the Patent Office significant power to revisit and revise earlier patent grants." *Ante,* at 8. I am not sure that the Court appreciates how remarkable this assertion is. It would give us cause to do away with judicial review whenever we think that review makes it harder for an agency to carry out important work. In any event, the majority's logic is flawed. Judicial review enforces the limits that *Congress* has imposed on the agency's power. It thus serves to buttress, not "undercut," Congress's objectives. By asserting otherwise, the majority loses sight of the principle that "no legislation pursues its purposes at all costs." *Rodriguez* v. *United States*, 480 U. S.

_____

traordinary cases a patent owner might seek mandamus to stop an inter partes review before the proceeding concludes.

522, 525–526 (1987) (*per curiam*). "Every statute purposes, not only to achieve certain ends, but also to achieve them by particular means—and there is often a considerable legislative battle over what those means ought to be. The withholding of agency authority is as significant as the granting of it, and we have no right to play favorites between the two." *Director, Office of Workers' Compensation Programs* v. *Newport News Shipbuilding & Dry Dock Co.*, 514 U. S. 122, 136 (1995). The inter partes review statute is no exception. It empowers the Patent Office to clean up bad patents, but it expressly forbids the Patent Office to institute inter partes review—or even consider petitions for inter partes review—unless certain conditions are satisfied. Nothing in the statute suggests that Congress wanted to improve patent quality at the cost of fidelity to the law.

The Court also observes that the inter partes review appeal provision, §319, "limit[s] appellate review to the 'final written decision.'" *Ante,* at 8. The majority reads too much into this provision. Section 319 provides simply that "[a] party dissatisfied with the final written decision . . . may appeal the decision." The statute does not restrict the issues that may be raised in such an appeal. As the Patent Office once explained (before having a change of heart), the "plain language of the statutory text" recognizes a "right of judicial review . . . for any party 'dissatisfied' by the [Patent Office's] ultimate 'written [decision],'" and "[n]othing in the statutory scheme limits the reasons that a party might be so 'dissatisfied.'" Memorandum of Law in Support of Defendant's Motion to Dismiss in *Versata Development Group, Inc.* v. *Rea*, Civ. Action No. 1:13cv328 (ED Va., May 16, 2013), p. 16. A party may be dissatisfied with a final written decision in an inter partes review because the Patent Office lacked authority to institute the proceeding in the first place, or because the Office committed some other error in the lead-up to its final decision.

Neither §314(d) nor §319 prevents a party from pressing such issues on an appeal from the final decision. This is familiar practice under 28 U. S. C. §1291, which similarly limits appeals to "final decisions of the district courts" but allows appellants to challenge earlier rulings as part of those appeals. See *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 712 (1996) ("The general rule is that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage in the litigation may be ventilated" (internal quotation marks omitted)); 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3905.1, pp. 250, 252 (2d ed. 1992) (noting "the general rule that an appeal from final judgment . . . permits review of all rulings that led up to the judgment" and observing that "[t]he variety of orders open to review on subsequent appeal from a final judgment is enormous"). And, as noted above, judicial review of "final agency action" likewise encompasses earlier rulings that are "not directly reviewable." 5 U. S. C. §704; see *supra,* at 6.

The Court next contends that my interpretation renders 35 U. S. C. §314(d) "superfluous." *Ante,* at 9. Reading the statute to defer review of institution decisions is "unnecessary," the Court says, because the "Administrative Procedure Act already limits review to final agency decisions" and a "decision to initiate inter partes review is 'preliminary,' not 'final.'" *Ibid.* But Congress reasonably may have thought that the matter needed clarifying, given that §314(d) itself calls such a decision "final" (albeit in a different sense, see *supra*, at 5–6). Language is not superfluous when it "remove[s] any doubt" about a point that might otherwise be unclear. *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 226 (2008). More important, my reading prevents an appeal from a decision *not* to institute inter partes review, which is plainly final agency action and so—absent §314(d)—might otherwise trigger immedi-

ate review. The Court asserts that this too is unnecessary because, in its view, a decision to deny inter partes review is "committed to agency discretion by law" and so unreviewable under normal principles of administrative law. 5 U. S. C. §701(a)(2); see *ante,* at 9. I agree that one can infer from the statutory scheme that the Patent Office has discretion to deny inter partes review even if a challenger satisfies the threshold requirements for review. But the law does not say so directly and Congress may not have thought the point self-evident. Again, 35 U. S. C. §314(d) plays a clarifying role. This gives the provision plenty of work to do. There is no need to read it more broadly.[6]

## III

### A

None of this is to say that courts must—or should— throw out an inter partes review decision whenever there is some technical deficiency in the challenger's petition or in the Patent Office's institution decision. Although §314(d) does not preclude review of issues bearing on institution, normal limits on judicial review still apply. For example, errors that do not cause a patent owner prejudice may not warrant relief. See 5 U. S. C. §706 ("[D]ue account shall be taken of the rule of prejudicial error"). Some errors may also be superseded by later

_____

[6] It is true that my interpretation leaves no apparent avenue (short of mandamus, at least) for judicial review of decisions *not* to institute inter partes review. This demonstrates that the presumption of reviewability has its limits. Nor is it surprising that Congress would design such a scheme. A patent challenger does not have nearly as much to lose from an erroneous *denial* of inter partes review as a patent owner stands to lose from an erroneous *grant* of inter partes review. Although such a challenger loses some of the advantages of inter partes review (such as a more favorable claim construction standard and a lower burden of proof), it remains free to challenge the patent's validity in litigation. A patent owner, on the other hand, risks the destruction of a valuable property right.

developments.  Most notably, once the Patent Office issues its final written decision, the probabilistic question whether a challenger is "reasonabl[y] likel[y]" to prevail on the merits, 35 U. S. C. §314(a), will be subsumed by the ultimate question whether the challenger *should in fact* prevail.[7]  And while I have no occasion here to decide the matter, it may be that courts owe some degree of deference to the Patent Office's application of the statutory prerequisites to inter partes review.

I would leave these considerations for the Court of Appeals to address in the first instance.  But I must confess doubts that Cuozzo could ultimately prevail.  As noted above, Cuozzo argues that the Patent Office improperly granted inter partes review of claims 10 and 14 on grounds not asserted in the petition for inter partes review, in violation of the statutory requirement that a petition must state the grounds for challenge "with particularity."  §312(a)(3).  The problem for Cuozzo is that claim 17—which the petition properly challenged—incorporates all of the elements of claims 10 and 14.  Accordingly, an assertion that claim 17 is unpatentable in light of certain prior art is necessarily an assertion that claims 10 and 14 are unpatentable as well.  Assuming that Cuozzo must show prejudice from the error it alleges, it is hard to see how Cuozzo could do so here.

---

[7] The Court recognizes that such issues are unreviewable even absent a statute like §314(d), comparing the Patent Office's "reasonable likelihood" determination to an indicting grand jury's finding of probable cause.  See *ante,* at 9.  But it draws the wrong analogy for this case.  Cuozzo's complaint is that the petition for inter partes review did not articulate its challenge to certain patent claims with adequate particularity.  This is more akin to an argument that an indictment did not sufficiently allege an offense and provide notice of the charges against the defendant, which is reviewable after trial and judgment.  See, *e.g., United States* v. *Carll,* 105 U. S. 611, 612–613 (1882) (overturning a conviction based on the insufficiency of the indictment).

## B

But any perceived weakness in the merits of Cuozzo's appeal does not mean that such issues are unworthy of judicial review. Section 312(a)(3)'s particularity requirement is designed, at least in part, to ensure that a patent owner has sufficient notice of the challenge against which it must defend. Once inter partes review is instituted, the patent owner's response—its opening brief, essentially—is filed as an opposition to the challenger's petition. See §316(a)(8); 37 CFR §42.120. Thus, if a petition fails to state its challenge with particularity—or if the Patent Office institutes review on claims or grounds not raised in the petition—the patent owner is forced to shoot into the dark. The potential for unfairness is obvious.

Other problems arise if the Patent Office fails to enforce the prohibitions against instituting inter partes review at the behest of challengers that have already sued to invalidate the patent or that were sued for infringement more than a year before seeking inter partes review. 35 U. S. C. §§315(a)(1), (b). Allowing such a challenge exposes the patent owner to the burden of multiplicative proceedings—including discovery in both forums, see §316(a)(5)—while permitting the challenger to exploit inter partes review's lower standard of proof and more favorable claim construction standard. Congress understandably thought that the Patent Office's power should not be wielded in this way. Yet, according to the Court, Congress made courts powerless to correct such abuses.

Even more striking are the consequences that today's decision portends for the AIA's other patent review mechanisms, post-grant review and CBM review, see *supra*, at 1–2, which are subject to a "no appeal" provision virtually identical to §314(d). See §324(e) ("The determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable"); see AIA §18(a)(1), 125 Stat. 329, note following 35 U. S. C.

§321, p. 1442 (CBM review generally "shall be regarded as, and shall employ the standards and procedures of, a post-grant review"). Post-grant review and CBM review allow for much broader review than inter partes review. While inter partes review is limited to assessing patentability under §102 and §103, in post-grant review and CBM review, patent claims can also be scrutinized (and canceled) on any invalidity ground that may be raised as a defense to infringement, including such grounds as ineligible subject matter under §101, indefiniteness under §112, and improper enlargement of reissued claims under §251. See §321(b); §§282(b)(2), (3). But this broader review comes with its own strict limits. A petition for post-grant review must be filed within nine months after a patent is granted. §321(c). And while CBM review is not subject to this time limit, Congress imposed a subject-matter restriction: The Patent Office "may institute a [CBM review] proceeding only for a patent that is a covered business method patent," which Congress defined to cover certain patents with claims relating to "a financial product or service." AIA §§18(a)(1)(E), (d)(1), at 1442; see §18(a)(1)(A), *ibid.*[8]

Congress thus crafted a three-tiered framework for Patent Office review of issued patents: broad post-grant review in a patent's infancy, followed by narrower inter partes review thereafter, with a limited exception for broad review of older covered business method patents. Today's decision threatens to undermine that carefully designed scheme. Suppose that the Patent Office instituted post-grant review on a petition filed 12 months (or even 12 years) after a patent was issued, and then invalidated a patent claim as indefinite under §112—a ground available

---

[8] Additionally, a challenger may file a petition for CBM review only if it has been sued for or charged with infringement of the patent. AIA §18(a)(1)(B), at 1442.

in post-grant review but not in inter partes review. This would grossly exceed the Patent Office's authority and would be manifestly prejudicial to the patent owner. Can Congress really have intended to shield such shenanigans from judicial scrutiny? The Court answers with a non sequitur: Of course the Patent Office cannot cancel a patent under §112 "in inter partes review." *Ante,* at 11. The Court seems to think that we could overturn the Patent Office's decision to institute "post-grant review" based on an untimely petition and declare that the agency has *really* instituted only "inter partes review." But how is that possible under today's opinion? After all, the petition's timeliness, no less than the particularity of its allegations, is "closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate . . . review," and the Court says that such questions are unreviewable. *Ibid.*; see §321(c); §312(a)(3).

To take things a step further, suppose that the Patent Office purported to forgive the post-grant review petition's tardiness by declaring the challenged patent a "covered business method patent," even though the patent has nothing to do with financial products or services (it claims, say, a new kind of tempered glass). Again, this involves the application of statutes related to the Patent Office's institution decision. See AIA §18(a)(1)(E), at 1442 (Patent Office "may institute a [CBM review] proceeding only for a patent that is a covered business method patent"). So is this specious determination immune from judicial scrutiny under the Court's reasoning?

If judicial review of these issues is unavailable, then nothing would prevent the Patent Office from effectively collapsing Congress's three-tiered review structure and subjecting all patents to broad post-grant review at all times. Congress cannot have intended that.

I take the Court at its word that today's opinion will not permit the Patent Office "to act outside its statutory lim-

its" in these ways. *Ante,* at 11. But how to get there from the Court's reasoning—and how to determine which "statutory limits" we should enforce and which we should not— remains a mystery. I would avoid the suspense and hold that 35 U. S. C. §314(d) does not bar judicial review of the Patent Office's compliance with any of the limits Congress imposed on the institution of patent review proceedings. That includes the statutory limit, §312(a)(3), that Cuozzo alleges was violated here.

\*    \*    \*

In enacting the AIA, Congress entrusted the Patent Office with a leading role in combating the detrimental effect that bad patents can have on innovation. But Congress did not give the agency unbridled authority. The principles I have set forth afford the Patent Office plenty of latitude to carry out its charge, while ensuring that the Office's actions—no less than the patents it reviews—stay within the bounds of the law.

I would vacate the Federal Circuit's judgment and remand for that court to consider whether the Patent Office exceeded its authority to institute inter partes review with respect to claims 10 and 14 of Cuozzo's patent. With respect to claim 17, I agree with the Court that the judgment below must be affirmed. See n. 1, *supra*; Part III, *ante.*